UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEPHEN STODDARD,

      Plaintiff,

v.                                    3:05-CV-362 (NPM)

MICHAEL J. ASTRUE,[1]
Commissioner of Social
Security Administration,

      Defendant.
-------------------------------------------------------------------------------------------------
APPEARANCES                                  OF COUNSEL

OFFICE of the UNITED STATES ATTORNEY    WILLIAM H. PEASE, ESQ.
Attorney for the Defendant
100 South Clinton Street
Syracuse, NY 13261-7198

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

Plaintiff Stephen Stoddard ("plaintiff") brings this action pursuant to §205(g) of the Social Security Act (the "Act"), codified at 42 U.S.C. §§ 405(g). Plaintiff seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's claim for disability

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and is substituted for Commissioner Jo Anne B. Barnhart as defendant in this action. Fed.R.Civ.P. 25(d)(1).

insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Act. Specifically, plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Daniel G. Heely denying his application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that the ALJ's decision was supported by substantial evidence. For the reasons set forth below, the court finds no reversible error and finds that substantial evidence supports the ALJ's decision. Accordingly, the decision of the Commissioner is confirmed.

## I.   PROCEDURAL HISTORY and FACTS

The following facts and procedural history are taken from the complaint, trial briefs, and the administrative record. Where the parties' rendering of the facts differs from the record, where facts are omitted, or in the interest of clarification, the facts will be supplemented as needed by undisputed facts from the record.

Plaintiff complains of both physical and mental impairments, including carpal tunnel syndrome, a bipolar disorder, and a post traumatic stress disorder ("PTSD"). Plaintiff filed an application for DIB and SSI payments on May 2,

2002. The claim was denied both initially and upon reconsideration. A request for a hearing was timely filed, and said hearing took place in Binghamton, New York on April 30, 2003. Upon completion of the hearing, and review of all of the evidence of record, the ALJ issued a decision on June 27, 2003, concluding that the plaintiff is not disabled within the meaning of the Social Security Act. On July 8, 2003, counsel for plaintiff appealed the ALJ's decision to the Appeals Council, requesting an immediate remand based on obvious mistakes by the ALJ in his decision, or if the case could not be summarily remanded, counsel requested that the tape and transcript of the hearing be provided to allow him to submit a complete brief. Tr. at 201. On June 28, 2004, copies of the exhibits and duplicate hearing tapes were provided to plaintiff's counsel. Tr. at 8. On July 22, 2004, plaintiff's counsel wrote what this court construes as a letter brief to the Social Security Administration's Appeals Division ("Appeals Division"), arguing that "the assessment of the Court is so flawed that it must be remanded." [2] Tr. at 204. On February 3, 2005, the Appeals Court denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. Tr. at 4. On

---

[2] The court notes the impropriety of the language used by plaintiff's counsel in that appeal, including, inter alia, the statement that "the Court's rationale ... is not only flawed, but moderately idiotic." Tr. at 204. The court reminds counsel that he is an officer of the court and should conduct himself accordingly.

3

March 22, 2005, plaintiff appealed the ALJ's decision to this court.

At the time of the ALJ's adverse decision, plaintiff was a 41 year old male[3] with a high school equivalent education.  After plaintiff's discharge from a career in the Navy, spanning from March 29, 1979 to July 10, 1996 (Tr. at 39), plaintiff worked, <u>inter alia</u>, in manufacturing, as a laborer, as a convenience store clerk, a convenience store manager, and automotive parts store worker. Tr. at 69.  Plaintiff alleges that he has been unable to work since March 3, 2002 [4] (Tr. at 39) due to his bipolar disorder and PTSD.[5]  Plaintiff receives a monthly Veterans Administration ("VA") disability payment for his carpal tunnel syndrome. Tr. at 211-12.

## II.   DISCUSSION

### A.   Standard of review

This court does not review a final decision of the Commissioner <u>de novo</u>, but instead "must determine whether the correct legal standards were applied and

---

[3]     Plaintiff's trial brief (Doc. No. 9) states plaintiff was 51 at the time of the ALJ's decision, but the record confirms he was 41, with a date of birth of 01/08/62. Tr. at 39.

[4]     This date was taken from plaintiff's original application for disability benefits filed on May 2, 2002. (Tr. at 39).  At plaintiff's hearing before the ALJ, he also proffers March 3, 2002 as the last time he was employed, having walked out of his job at Advance Auto Parts (Tr. at 213) after having problems with a female supervisor. Tr. at 159.  Plaintiff's trial brief alleges "an inability to work as of August 1, 2001." Doc. No. 9.  No explanation is given for the discrepancy.

[5]     Plaintiff states that his PTSD stemmed from a shipboard battle experience during the Desert Storm conflict (Tr. at 117) but the court finds no additional documentation that discusses or authenticates this claim.

4

whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "The Act must be liberally applied, for it is a remedial statute intended to include [,] not exclude."  Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).

    **B.**    **Disability Defined**

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security Disability to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to

> determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity[6] to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615

---

[6] Residual functional capacity ("RFC") refers to what a claimant can still do in a work setting despite any physical and/or mental limitations caused by his or her impairments and any related symptoms, such as pain. An ALJ must assess the patient's RFC based on all the relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

(S.D.N.Y. 2007) (internal quotations omitted).

As a threshold issue, the court emphasizes that 42 U.S.C. § 423(d)(1)(A) specifically states that a person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  Substantial work activity is defined as "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  Gainful work activity is defined as "work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a) and (b).

**C.     Analysis**

In the case at bar, plaintiff argues that the ALJ erred in (1) failing to consider plaintiff's physical limitations and failing to order a consultive exam; (2) failing to consider the side effects of the plaintiff's medication; (3) failing to properly assess the plaintiff's credibility; (4) failing to properly assess the plaintiff's psychiatric impairment; and (5) failing to call a vocational expert. Doc.

No. 9.

The court first addresses the allegation that the ALJ failed to consider plaintiff's physical limitations and failed to order a consultive exam.  In his decision, the ALJ noted that the plaintiff alleges, <u>inter alia</u>, that he cannot stand or walk for long periods of time and has a stabbing pain in his knees, hands, wrists and elbows.  Plaintiff complained of bilateral tinnitus and hypertension, and also stated that he couldn't sit for prolonged periods of time. Tr. at 16-17.  The ALJ then cited to the record for evidence for his findings that despite a complaint of pain in his knees, a Veteran's Administration ("VA") orthopedic examination included x-ray studies of the knees which were reported to be normal, and plaintiff was reported to ambulate without evidence of a limp, and was able to get on and off the examining table with ease. Tr. at 17.  The administrative record reveals that VA outpatient records show that plaintiff was diagnosed with bilateral carpal tunnel, and was also fitted with a hearing aid in the left ear which was reported to have improved hearing sensitivity and resulted in an overall improvement in most listening situations. <u>Id</u>.  The ALJ also cited records from the Clinton Street Family Care Center and United Health Services Hospitals, where plaintiff was diagnosed at various times with left knee pain, back pain, sinusitis, neck pain secondary to muscle spasm, stable hypertension controlled by medication, subclinical

hypothyroidism, nicotine addition, gastroesophogeal reflux disease, stable allergic rhinitis and asthma. Id.; Tr. at 121-50.  Plaintiff's assertion that the ALJ did not consider plaintiff's physical ailments is disingenuous at best, as each ailment complained of is listed and discussed in the ALJ's decision, and the ALJ's determination is backed by the medical evidence in the record.  Plaintiff's hypertension has been stabilized with medication.  Plaintiff's tinnitus has been improved with the help of a hearing aid.  Plaintiff's knees were shown to have no physical evidence of instability.  The ALJ does not question plaintiff's complaints of pain from his carpel tunnel syndrome and recognizes plaintiff's diagnosis of same[7] but finds that "there is no indication that the claimant's impairments have had more than a minimal effect on his ability to do basic work activities." Tr. at 19.  The record bears this out.  The ALJ reported that plaintiff's physical functional capacity assessment indicated that plaintiff was reported to have no exertional, postural, manipulative, visual, communicative or environmental

---

[7] The Commissioner correctly points out that "a finding of disability for purposes of entitlement to veteran's benefits is not dispositive on the issue of entitlement to Social Security benefits.  Indeed, the Commissioner of Social Security and the Secretary of the VA have different definitions of the term 'disability.'" Doc. No. 12 at p. 10.  See e.g., 38 U.S.C.A. § 1958. Statutory total permanent disability: "Without prejudice to any other cause of disability, the permanent loss of the use of both feet, of both hands, or of both eyes, or of one foot and one hand, or of one foot and one eye, or of one hand and one eye, or the loss of hearing of both ears, or the organic loss of speech, shall be deemed total permanent disability for insurance purposes...." (West 2009). Pursuant to these guidelines, the VA has determined that plaintiff is 40% disabled due to his carpal tunnel syndrome. Tr. at 211.

limitations. The court finds that the ALJ set forth the crucial factors justifying his findings with sufficient specificity to allow this court to determine that substantial evidence supports the ALJ's decision that plaintiff does not have a severe disability, i.e., the subjective evidence in the record affirms the ALJ's decision that plaintiff has no physical impairment that meets or medically equals a listed impairment pursuant to the Act. The ALJ also found that the durational requirements pursuant to the Act, as set forth supra, are not met. In other words, the ALJ found that the record did not reveal any medically determinable physical impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Accordingly, the court finds that the ALJ adequately considered the plaintiff's physical impairments. The court found substantial evidence in the record affirming the ALJ's findings, precluding the need for additional medical examination.

     Plaintiff next complains that the ALJ failed to consider the side effects of the plaintiff's medication. The court points to plaintiff's own testimony at the hearing, where, when asked by the ALJ if "you are having any bad reactions -- side effects from any of [the medications] as far as you know ...," plaintiff responded, "[j]ust a recent one that he prescribed for anxiety is -- it gives me --

causes me to have asthma attacks."[8] Tr. at 214. The ALJ further inquired whether the plaintiff had spoken to his doctor about the asthma attacks, to which plaintiff answered in the negative. Id. The court notes that the plaintiff also revealed to the ALJ that he smoked "[t]wo, two-and-a-half packs" of cigarettes a day. Tr. at 214.

When plaintiff's counsel questioned his client at the hearing, he ascertained that while the medications kept the plaintiff's agitation in check, if he took the medications in the morning, they made him tired all day.[9] Tr. at 224-25. The court finds that the ALJ did adequately consider the side effects of plaintiff's medications, as evidenced by his direct questioning at the hearing, and that the plaintiff failed to prove that the side effects, if any, were disabling.

Plaintiff next argues that the ALJ failed to properly assess the plaintiff's credibility, specifically, that the ALJ didn't consider plaintiff's complaints of pain.

> The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). If the findings "are supported by substantial evidence, the

---

[8] Plaintiff's psychiatrist, Dr. Jafri, also wrote that plaintiff had no side effects to the medications. See, e.g., Tr. at 154.

[9] Plaintiff's assertions were disputed by Dr. Jafri, who wrote, "[h]e reports to fall asleep too much and too easily even during the daytime and denies it is due to boredom, but knows that he is not on any tranquilizing drugs and he did feel the medication was causing it. In case it is due to Paxil he is advised to take it in the evening time." Tr. at 156.

> court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." <u>Aponte v. Secretary, Dep't of Health & Human Services</u>, 728 F.2d 588, 591 (2d Cir.1984) ... Where a claimant alleges symptoms of a greater severity of impairment than can be shown by objective medical evidence, other evidence will be considered, including claimant's daily activities and the medications, methods and treatments used to alleviate [his] symptoms. 20 C.F.R. § 416.929(c)(3). It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." <u>Caroll v. Sec'y of Health and Human Serv.</u>, 705 F.2d 638, 642 (2d Cir.1983).

<u>Snyder v. Astrue</u>, 2009 WL 3381556 at * 7  (N.D.N.Y. 2009).

While plaintiff objects to a specific example used by the ALJ to question the plaintiff's credibility, based on the fact that a period of time had lapsed between his complaints which accounted for the discrepancy (Doc. No. 9 at p. 6), the court found that the record, taken as a whole, was rife with contradictory statements made by plaintiff to his doctors.  The court also notes that in his decision, the ALJ thoroughly discussed the plaintiff's complaints of pain, comparing said complaints to, <u>inter</u> <u>alia</u>, plaintiff's daily activities, his work history report, and the treatments and medications used to alleviate his symptoms. Tr. at 15-16.   Accordingly, the court finds that the ALJ properly assessed the plaintiff's credibility pursuant to the guidelines set forth in the ACT, based on substantial evidence in the record.

Plaintiff next argues that the ALJ failed to properly assess the plaintiff's psychiatric impairment. Specifically, plaintiff argues that the ALJ completely ignores the hearing testimony of the plaintiff as to his manic phases, and his testimony that without the medications he becomes so agitated that he cannot deal with either bosses, employers, or customers. Plaintiff claims that the decision also ignores the testimony that plaintiff "goes absolutely ballistic from the PTSD." Doc. No. 9 at p.8). The ALJ devoted three pages to the discussion of plaintiff's psychiatric impairment. The court finds that the ALJ's discussion accurately reflects the information in the record, and that, pursuant to the ACT, the ALJ applied the correct listing criteria. In determining whether substantial evidence supports the ALJ's determination, the court searched the administrative record for the initial diagnosis of plaintiff's bipolar disorder. The court found that from July 10, 1997 to August 19, 1997, plaintiff was being treated for Depressive Disorder (NOS) at the Syracuse Veteran's Association Medical Center. On September 2, 1997, that diagnosis was changed to Bipolar Disorder based on plaintiff's newly proffered information that he had been suffering from manic episodes lasting from two days up to six months. Tr. at 186-87. The ALJ also considered plaintiff's PTSD despite this court's inability to find a specific diagnosis of same in the record.

A consultive examination conducted by New York State Licensed Psychologist Brett T. Hartman resulted in a diagnosis of Bipolar Disorder NOS ("BP-NOS"). Tr. at 119-20. BP-NOS is defined as follows: "[BP-NOS] is diagnosed when a person has symptoms of the illness that do not meet diagnostic criteria for either bipolar I or II. The symptoms may not last long enough, or the person may have too few symptoms, to be diagnosed with bipolar I or II. However, the symptoms are clearly out of the person's normal range of behavior."[10]  Based on the foregoing, the court finds that the ALJ properly assessed the plaintiff's psychiatric impairment, and that the finding that plaintiff was not disabled is based on substantial evidence in the record.

Finally, plaintiff argues that the ALJ erred in failing to call a vocational expert ("VE").  The court finds that pursuant to the law, the ALJ was not obligated to call nor was there any need to call a VE.  "If the non-exertional impairment or impairments ***do significantly diminish*** the individual's ability to perform a full range of the exertional category of work, then the ALJ may use a VE to satisfy the Commissioner's burden to show that the plaintiff can perform substantial gainful work at step five of the disability analysis." Anderson v. Commissioner of Social

---

[10]    See http://www.nimh.nih.gov/health/publications/bipolar-disorder/complete-index.shtml#pub1(October 16, 2009).

Security, 2009 WL 3064764 (N.D.N.Y. 2009) (emphasis added).

Citing no law, plaintiff asserts that, for the reasons set forth in his brief, "with respect to the side effects of medications, the physical defects and the severity of the mental defects, the Court should have called a vocational expert to give his opinion as to whether there were jobs available for the claimant since he could not perform his prior work." Doc. No. 9 at p. 9. The ALJ found that plaintiff retained the residual functional capacity to perform work at all functional levels, but because of his mild difficulties in social functioning, he could have no more than limited public contact with others. Accordingly, plaintiff is not able to perform his past relevant work. Tr. at 20-21. However, the ALJ found that the plaintiff's ability to perform work at all exertional levels was not significantly compromised by his non-exertional limitations, and consequently, the ALJ determined plaintiff was not disabled. The ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform given his age, education, past relevant work experience, and residual functional capacity. Tr. at 22. Based on substantial evidence in the record supporting the ALJ's decision, the court concurs.

## III.   CONCLUSION

For the reasons set forth above, the court affirms the findings of the

Administrative Law Judge. Accordingly, the Commissioner's motion on the pleadings is hereby GRANTED. The plaintiff's complaint is DISMISSED with prejudice.

SO ORDERED.

October 27, 2009.

_____
Neal P. McCurn
Senior U.S. District Judge